No. 19,464.

J. WALKER, *Appellee,* v. THE MISSOURI PACIFIC RAIL-
WAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

RAILROAD — *Train Obstructing Public Street — Delaying Fire
Department — Liability of Railroad for Fire Loss.* Where
the ordinances of a city prohibit railroads from blocking or
obstructing any street for more than five minutes, and en-
tirely prohibit stopping engines, cars or trains on certain
streets, and where a train is stopped on one of the last-
mentioned streets for the purpose of repairing the brake
rigging on an engine which, without negligence on the part
of the railroad, is broken and dragging on the track and
likely to derail the train, and the fire department of the city,
unknown to the trainmen, is delayed three or four minutes
in crossing the railroad track on this street, and as a result
property is consumed by fire, the railroad is not liable for
the loss, if it pulls its train off the street as soon as it can
after it is notified that the fire department desires to cross
the track.

2. SAME—*Cities by Ordinance May Prohibit Trains from Block-
ing Public Streets.* Under section 1281 of the General Stat-
utes of 1909, cities of the first class having a commission
form of government have power to enact ordinances pro-
hibiting trains from blocking certain streets at any time,
and from blocking any street for more than five minutes at
one time.

Appeal from Sedgwick district court, division No. 2;
THORNTON W. SARGENT, judge. Opinion filed June 12,
1915. Reversed.

*W. P. Waggener, A. E. Crane,* both of Atchison, and
*O. H. Bentley,* of Wichita, for the appellant.

*Clyde E. Souders,* and *Otto R. Souders,* both of
Wichita, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff recovered judgment for
damage to his building caused by fire. The defendant
appeals.

The plaintiff's building, and furniture therein, were damaged by fire communicated from another building. The fire was not started by the defendant. The defendant's train, standing on the track five minutes, blocked Central avenue in Wichita, and delayed the fire department three or four minutes in reaching the fire. By one ordinance of the city, trainmen were prohibited from blocking any street longer than five minutes, and by another ordinance they were prohibited from stopping trains, engines, or cars, on Central avenue. The train was stopped under the rule of "safety first," to repair the brake rigging on the locomotive, which had fallen down and was dragging on the track, in which condition it might derail some part or all of the train.

The jury made special findings of fact as follows:

"Q. 1. Did a locomotive with a number of cars attached to it back said cars north over Central avenue and couple onto other cars which were north of Central avenue at the time of the fire? A. 1. Yes.

"Q. 2. After said cars had been coupled together, did said locomotive start south with said cars? A. 2. Yes.

"Q. 3. Was said train stopped shortly after it had started south because of the fact that the brake rigging on the locomotive had fallen down and was dragging on the tracks? A. 3. Yes.

"Q. 4. At the time said train stopped across Central avenue to repair the brake rigging on the engine, did any of those in charge of said train have any knowledge that there was a building on fire west of said crossing? A. 4. No.

"Q. 6. At the time said train was stopped to repair said brake rigging, had the fire department reached said crossing? A. 6. No.

"Q. 7. When those in charge of said train received notice that there was a fire west of said crossing, and that the train blocking said street crossing prevented the fire department from crossing over said crossing, what was there that those in charge of said train could have done which they did not do to open said crossing so that it could be used by said fire department? A. 7. Nothing.

"Q. 8. After said train had coupled onto said cars which were north of Central avenue crossing and had started to pull said cars over said crossing, and then after moving some distance stopped to repair said brake rigging on said locomotive, how long did said train at that time remain stationary? A. 8. Five minutes.

"Q. 9. At the time said train stopped for the purpose of making temporary repairs to said brake rigging, had the fire department reached Central avenue crossing? A. 9. No.

"Q. 10. How long was said fire department detained at said crossing by reason of defendant's train blocking the same? A. 10. Three or four minutes.

"Q. How long was Central avenue blockaded by defendant's train? A. Five minutes.

"Q. Did a member of the train crew know that the fire department was desirous of crossing defendant's track on Central avenue to go to a fire when the train was on Central avenue? A. Yes.

"Q. Did such member of the train crew signal the engineer to pull the train away from Central avenue? A. No.

"Q. Did such member of the train crew attempt to signal the engineer in charge of the train to pull the train away from Central avenue? A. Yes.

"Q. Was the engineer in charge of the train negligent in observing the signals given by a member of the train crew? A. No.

"Q. Did the engineer delay for an unreasonable time in moving the train from Central avenue? A. No.

"Q. If the train had not obstructed Central avenue would the fire department have saved any part of plaintiff's property from being destroyed by fire? A. Yes."

(1) The negligence charged in the petition is that the defendant blocked Central avenue for about ten minutes, and that this was in violation of the ordinances of the city and of the statutes of the state. If there was no legal justification or excuse for stopping the defendant's train on Central avenue, the instructions of the court, the verdict of the jury and the judgment are right and proper, but on the other hand, if there

was legal justification or excuse for stopping the train: with cars across Central avenue, the defendant should not be held liable. The findings of the jury show that the train was stopped because the brake rigging on the locomotive had fallen down and was dragging on the tracks. The evidence shows that this was liable to derail the cars. In order to escape liability for stopping on Central avenue, was it necessary for the defendant to pull its train off that avenue, and take the chances of wrecking the train, destroying its property and that carried by it, and of injuring its employees and others who might be near the track? We think not. The trainmen did not know of the fire. They were obeying the rules that the public demands shall be enforced for the protection of life and property. It would not have been negligence on the part of the defendant if its train had been wrecked, without its fault, on Central avenue, thereby closing the avenue to travel; neither would it have been negligence for the defendant to have stopped its train on Central avenue to prevent an accident which would cause injury to person or property; neither was it negligence for the defendant to stop its train on Central avenue to prevent an accident that might have resulted in injury to life or property. This is true notwithstanding the ordinance of the city. If the ordinances are construed so as to prohibit stopping on Central avenue to prevent accidents, they are unreasonable to that extent.

The court instructed the jury, in part, as follows:

"If you find that the defendant stopped the train in question on Central avenue and thereby obstructed its passage, then you are instructed that such obstruction under the evidence in this case violated the ordinances of the city of Wichita and the statute of Kansas referred to without regard to whether the obstruction was reasonable or unreasonable, accidental or intentional."

45—95 KAN.

This was erroneous for the reasons above set forth, and because the state law does not prohibit stopping on streets. Section 7142 of the General Statutes of 1909 reads:

"Each and every railroad company or any corporation leasing or otherwise operating a railroad in Kansas is hereby prohibited from allowing its trains, engines or cars to stand upon any public road within one-half mile of any incorporated or unincorporated city or town, station or flag station, or upon any crossing or street, to exceed ten minutes at any one time without leaving an opening in the traveled portion of the public road, street or crossing of at least thirty feet in width."

This statute must be so construed as to permit trains to stop anywhere to prevent accidents. The question of the necessity for stopping the train to prevent an accident should have been submitted to the jury.

(2) The defendant argues that the ordinances of the city are void because they place greater restrictions on the operations of trains than those placed by the statute. The city of Wichita gets its authority to pass these ordinances from section 1281 of the General Statutes of 1909. This section is:

"To regulate the crossings of railway and street-railway tracks and provide precautions and prescribe rules regulating the same, and to regulate the running of street railways or cars and railway engines and cars in the city, and to prescribe rules relating thereto and governing the speed thereof; and to make other and further provisions, rules and regulations to prevent accidents at crossings and on tracks of railways, and to prevent fires from engines; and to require all railway companies to erect viaducts over, or tunnels under, their tracks at the crossing of streets."

These ordinances are within this section of the statute. Unless the powers granted by this section are in conflict with section 7142 of the General Statutes of 1909, the ordinances must be held valid, subject to the construction herein indicated. Under section 7142 of the General Statutes of 1909, trains, engines or cars

must not stand on streets to exceed ten minutes at any one time without leaving an opening for travel, but this does not prohibit cities from placing greater restrictions on the operation of trains to keep its streets open, and to prevent accidents.  Section 7142 does not say that trains shall be permitted to stand on streets for ten minutes.  No right is conferred by that section.  It is not necessary that the ordinances of the city permit trains to block streets for ten minutes.  In cities of 50,000, to permit successive trains to stand for ten minutes across a busy street would be a serious. and unnecessary inconvenience.  The statute does not provide that this shall be done.  Bearing somewhat on this question, are *Minneola v. Naylor,* 84 Kan. 147, 113 Pac. 309, and *Stark v. Geiser,* 90 Kan. 504, 505, 135 Pac. 666.

The defendant also contends that judgment should have been rendered in its favor on the findings and the undisputed facts, and asks that this court direct judgment in its favor.  That we can not do.  The case should be submitted to a jury under proper instructions.

The judgment is reversed and a new trial is granted.